Documented 19-1189 Pipes v. United States If your honor goes to the sites and the way that it's laid out, there's 10 USC 101 D7B as well as 38 CFR 3.6 D2. These set out the special additional duties have the same language. 38 USC 206 A3 large A double I. That explains that there must be pay performed for inactive duty training. The AFMAN then in turn defines the special additional duties, and that's at appendix 189 paragraph 4.1. These special additional duties, there are only five of them as the trial court correctly held. And none of the order supposedly given to Mr. Pipes does not fit into any of these duties. Then when you continue going through IDT authorization, there must be the form 40A, and there must be for pay and points or for points only. Well, your list of five argument doesn't leave any room for B to operate. Well, with respect to I'm not sure if I understand your argument now, which is that was made below was that there have been a military has defined IDT and said there are five kinds of IDT, right? Yes. And your adversary's argument is, well, that's with regard to A, not B. The IDT, the special additional duties as a... Give me an example of a special, let's say the S-FIP you say is not on the list of five, and therefore it can't be a special additional duty. So give me an example of a special additional duty that would suffice. If I can point the court to appendix page 8. Give me an example, can you? An example of one of the five types. I know I've got the list of five here, and we agree that S-FIP is not there. Yes. So what is a special additional duty that's authorized? So that would be, for example, if there was a form 40A filled out for a four-hour period of time of training that was required. That would be a special additional duty, and the training could be for anything. And to draw the... So can I just clarify? Are you saying that this would be a special additional duty that he had to run five times a week if there had simply been an AF40 filled out? If that form had been filled out, this would qualify. If the run took him four hours to complete, it would be a four-hour period. There's no question he was ordered to do it. That's accepted in the record. So if only the form had been filled out, that would have been the magic difference in this case? No, Your Honor. There would have also had to be pay and points or points assigned as well. And the form 40A, by its nature, necessarily involves preauthorization to occur. So there would have to be each of those items before then this could be considered special additional duties. And if I may direct the Court, under 1017D7A, those duties prescribed for reserves by the Secretary under Section 206 of Title 37, the trial courts explained what those duties are. What we all are referring to is B, under the special additional duties, which are those five items set forth by the IDT, not the... The five items are special? The five types of IDT which are permitted. How do we know that? The trial court refers to the statutes, Appendix 8 and 9, as well as the AFMAN 36-8001. Did the chain of command folks who, in the record, confirmed that he was ordered to do this, did they have authority to fill out the form 40A? If Mr. Pipes' supervisor filled out the form, yes, he would have authority. He would have to seek preauthorization to do so and determine pay or points to do that. What does that mean, preauthorization? How high a level? You just said he had authority to do that, but you cabined it by saying only if he has authorization. With respect to Form 40A, Appendix Page 246, it requires the reservist's signature, the authorizing official, and the official's signature. And I do not know, Your Honor, if the supervisor was both the authorizing official and the official. Well, do you know what common practice is? I mean, this kind of thing must happen numerous times every day. We've got a lot of reservists, and a lot of people need to be fit to be called up for duty. So are these people generally, as far as you know, not getting paid for the time in which they do their exercises and their fitness training? That is correct, Your Honor. They are not getting paid. I believe it was the Staff Master Sergeant at Appendix Page 56. I'm sorry. Appendix Page 31 stated that, for example, the self-paced fitness improvement plan is voluntary. It has never been IDT that this is in part. What about the forms that he filled out? Can you give me a little? Was he required to fill out certain forms at the completion of the training period? He was filling out the forms. I don't know if they were required to be filled out in his monthly time when he was on duty status. Well, isn't that probative? I mean, if he was required to fill out certain forms, so at least I assume the government would concede that the time he was filling out the required forms would have been sort of duty status. Again, Your Honor, that goes back to whether there was the Form 40A and whether this was for pay or points. And there's no indication whatsoever that there was pay or points or that this form was filled out. Can I ask you, so what would happen? And this is what we talked about early in your argument. These folks order him to do this. He goes to that. He refuses to do it. He won't fill out the forms. He tells them, no, I'm not doing it, or they inquire, and he said he hasn't done it. What's step two? So if he refuses to do that when he's—if he refuses, for example, to fill out the form 1975— Or to do the training. Or to do the training when he's on an off-duty status, he can be required to perform fitness assessment and physical fitness when he's on in-duty status. And then if he disobeyed that order, then there would be punitive measures. If, however, he is asked about what he did on his— What would be those occasions while he's not called up to active duty? They would be like if he was in a UTA? Correct, Your Honor, if he's in his weekend training, for example, when he goes to duty. And then is that what a UTA is, weekend training? That is one of them, Your Honor. Okay. So tell me what happens. I mean, he says, no, I'm not going to do it. Somebody brings charges against him. I mean, he's not following an order. We're going to parse out at some point in adjudicating whether or not the order was lawful. But what happens at the initial instance? So if, Your Honor, let's say he shows up to a UTA and says, I don't have any forms. I didn't fill them out. I didn't do the exercise. Then they can say, fill out the forms now. And if he refuses to do so, that is punishable. If he shows up without the forms, there is no punishment because he was never lawfully ordered to fill those out when he was off duty. And so that is the distinction where when he is in duty status, he is required to perform lawful orders. Is it your belief or do you know how often reservists like Mr. Pipe are actually ordered by their commanding officer to participate in SFIP? Because he was ordered. Your response is it wasn't a lawful order. Do you have any sense of whether such unlawful orders are regular in the military? I do not have a sense, Your Honor, because it is generally understood and required that everyone must be in apt physical shape. And so if somebody, for instance— So does that mean that this case probably doesn't repeat itself very often, that this is a one-off or an unusual scenario, either because he failed so many times and therefore it's unlikely you'd end up in this situation, or unusual because it's not normal for commanders to issue unlawful orders? There's no question he was ordered. You're saying it was unlawful. Apart from a few good men, it seems, and Jack Nicholson, which I would do a little demonstration for you. My clerks have already seen it, but I'll push that aside because I don't want this case not to seem as serious as it really is. But, I mean, apart from that sort of thing, I mean, I guess what I'm troubled by is your argument that this is an unlawful order. And I want to know, is this the kind of thing that you think happens all the time, so it's really important for him not to get his compensation here, because otherwise there's going to be a long line out the door of lots of people who have been unlawfully ordered? Or are you saying this is an unusual situation, in which case maybe we can look at it through an unusual lens in assessing what to do? I want to know how often these unlawful orders are being issued. I don't have an exact answer to that, Your Honor. I can say, however, that I'm sure it is not uncommon for someone's commander to say, you need to get in shape, work out. No, there's a difference. He says this was in writing, and he says it was oral, and he says that he was ordered to do this five times a week, to run five times a week, and then the doctor said get out and run after taking his blood pressure, recognizing he had hypertension, and then sent him out to run. So there's no doubt this kid, at least on the record we have in front of us, was ordered to do this. This wasn't, you might want to do a little more exercise in order to pass your physical. He was ordered to do specific exercise. At least that's the record we have in front of us as of now. You may be able to dispute whether that's correct at a later point, but what we have in front of us now is he was ordered to do this expressly and specifically. As to whether there are numerous instances of being ordered specifically to participate in SFIP, which I will point the court to appendix page 103, which is presumably the type of written order that Mr. Pipes is referring to, which contains no indication of the amount of time as to the exercise or the quantum. I do not understand the government to have disputed that he was ordered to run five times a week. Did the government dispute that? No, Your Honor. So as of now, on the record in front of us, this is not the document that ordered him. The record in front of us, which is undisputed by the government, is he was ordered to run five times a week and to do push-ups. An unlawful order, yes, Your Honor. And so what I'm trying to get at, because I'm very confused about either are lots of orders like this being given to reservists or was it only Mr. Pipes? And I don't have an answer to that question, Your Honor. All indications in the record show that SFIP is a voluntary recommended activity. I do not know to what extent there are other commanders who have given verbal orders in the way that Mr. Pipes' commander states he gave Mr. Pipes an order to perform these activities. I will also note that Mr. Pipes at no point in the two years of time attempted to get a Form 40A filled out or attempted to obtain points or pay for presumably the exercise he was ordered to perform. He can waive that, correct? He can waive points, right? He doesn't have to take them. I do not believe he can waive points because then that gets into the Anti-Deficiency Act concern that he's being completely uncompensated for orders. Is there magic in the word directs? I noticed that AFI 248 says the Union Squadron Commander directs members in forfeit to enter as opposed to saying order. And when I did a word search in AFI 248, 2004, the word order never came up. I wonder if what a commander thinks he's doing when he tells somebody to go into a SFIP, he's encouraging him, directing him as opposed to, quote, ordering. I realize in this case we have two persons who said we ordered him to do it. We've got a third person that said, well, they never ordered people to do that. I would say, Your Honor, that with respect to the direction, if the court looks to appendix page 221, which is also from the AFI 10-248 supplement that defines the SFIP, it explains that it's a program that's recommended, that reservists are in non-duty status, so their participation is not mandated. They are encouraged to take part on a voluntary basis. Well, that means they're directed as opposed to ordered. That's why I asked if there was any magic because it's on page 12 of the SFIP where I refer to this as direct members to enter these programs. And that could be the magic word versus order, or it could be that the commander considered himself to be giving an order rather than a recommendation or a direction, but, in fact, he was giving a recommendation or direction. Yeah, well, the problem that members of the panel have is that Mr. Pipes has testimony in the record that he was ordered, the kind of order that might subject you to a UMJA liability, and he was ordered to do this as opposed to said, well, it's a good idea for you to do this because if you don't do it, you're going to fail another test, and then you're going to get kicked out of the reserves. I would note that the order simply could not be lawful in this instance because the commander would be ordering Mr. Pipes to do something on inactive duty status without taking any of the necessary steps to comply with that status. Would you agree that probably the only, from your perspective, the only valid order that could be given to an off non-duty status veteran who's at home or wherever would be the order saying I'm calling you up to active duty? Yes, Your Honor. And otherwise, that individual would be... Or no, you could get an order that told you to come to a UJA or whatever, come in for next year, you're on, you have to come in next weekend or whatever. Yes, you can be ordered to come in to perform duty. But orders that are bringing you back into reserve status, active duty as a reservist. Other than that, you would say there's no class of orders that could be lawfully issued to a reservist in non-duty status. Unless you are turning into the inactive duty status for those special provisions. Yes, Your Honor. And if you had gone, if you had been put into something that you agreed was inactive duty training and a specific program, then any order issued in connection with that would be a valid order. Inactive duty is duty. I'm not certain if I understand the court's question. I'm having a situation, I'm just trying to get in my mind the class of orders that you would feel would be lawful exercise towards a person like Mr. Pipes with regard to this fitness issue. So if they had put him into a SPIP and everybody agreed it was a legit put in and it constituted statutory inactive duty training, then any order given to him in connection with that inactive duty training would be a valid order. If he was validly put into the SPIP and it was for payer points and the Form 40A was filled out, yes. Your bottom line argument is that SPIP never has been inactive duty training under any iteration of the AFIs. Yes, Your Honor. There is no circumstance under which, to my understanding, has been considered inactive duty training. Can I just ask you one other question, which is sort of a little outside of the box? But it seems to me that, at least on the facts of this case, what went down, there was a medical opinion involved. I mean, the problem here seems to have arisen because he probably shouldn't have been doing this running under medical care. There were some doctor observations that confirmed he shouldn't have been, but yet he did. Does the government have any comment on what went down in that scenario? With respect to the medical advisor's opinion, it appears that there were indications that Mr. Pipes had high blood pressure, whether that was a result of other medication he was taking or not, that Mr. Pipes' personal physician recommended that he go on to blood pressure medication, he was not put onto it. Certainly it is unfortunate that he was... But there was some government medical guy who was checking people out before they undertook this very strenuous exercise program, right? I believe, yes, there was certainly a medical evaluation completed to determine... And that evaluation registered him as having extraordinarily high blood pressure, according to the doctor's notes, correct? Correct. There were indications that, yes, he had high blood pressure. But the doctor tested him, and he said the doctor realized he had high blood pressure but didn't tell him. And then the doctor said, you're fit to go out and run. Yes, Your Honor, and that is why Mr. Pipes has a 90% disability rating, service connection, excuse me, and is receiving his service connection for the high blood pressure. Okay, thank you. Will we store some time for questions? I think the last point that the panel was hitting on is key. If Mr. Pipes had brought a case for medical malpractice, which clearly occurred here, or for being ordered to do something in civilian status under the Federal Torts Claims Act, the government down the street in the district court would be arguing that Ferez bars his claim because he was incident to service when he was injured, i.e. had the stroke. He can't have it both ways. Either he was doing something that he was ordered to do, or he wasn't. So if we look at it from the Ferez perspective, there's clear malpractice. The government admits it. Dr. Carson, the Air Force board doctor, says that the Air Force did do less than desirable medical treatment of this individual. But what about the points or pay argument the government made? The government insists that since there were no points or pay associated with this, this cannot ever qualify as inactive duty training. They're just flatly wrong. Look at the other cases where Federal Circuit Courts of Appeals have found people to be in active duty status or in active duty training where they weren't being paid, where they were in car accidents when they were purely civilians, when they're ROTC cadets doing physical fitness training, where they're having heart attacks when they're in between duty statuses. All of those cases in the Second and Eighth Circuit and the Court of Claims don't require these individuals to be getting paid for a short trip from the University of wherever to the status. So what is the limiting principle in those cases? What the courts say, and in Wake the court was looking at 101D7B, and they said, but for the order, but for the military status, the injury wouldn't have occurred. If you weren't in the car going to take a test to be a naval aviator, you wouldn't have been in a car accident. But for the order to serve as acting for the colonel, you wouldn't have had a heart attack and you wouldn't have been there. But for being ordered to pass a fitness, these were all lawful orders, but they weren't being paid. There was no challenge to the lawfulness. Right. In this case, the government, we believe, is making an argument that's just off point. It's just not on point. Can I just ask you a few sort of not related questions, but for my own edification of what's going on here, and you may or may not have the answer to this. He's getting, we've all heard, and it's in the record, that he's getting this disability, the claims from the VA, and he's getting payment for a claim there. Is there some sort of offset if he were to obtain disability retirement? Is all of that stuff cumulative in what a complainant gets, or is there offsets for those sorts of things? I believe there's some sort of offset for the disability. The VA compensation is one thing. The military disability retirement is substantially more money and entitles him to benefits that he's not currently getting. So he was 47. When would he otherwise be eligible for his retirement? 60. So we're talking about 13 years of being on some sort of retirement. When you get on disability retirement, is there an annual assessment or some sort of assessment as to your ability to work or to obtain employment? I do not believe it's the same as the civilian FERS or CSRS disability retirement system, where those individuals have to annually, or as requested by OPM, certify they are physically enabled to perform the essential functions of the job. Once the military retires you and says, you are not capable of performing military service, you're ineligible, they're not going to call him back in and say. It's disability retirement. Correct. They're not going to call him back in and say, show me you're not disabled, so we're going to bring you back to active duty. It's not the same as in the civilian service. Thank you. That's helpful. Any other questions? Okay. Thank you. Thank you both sides. Both sides for the help and the argument. Thank you. Thank you.